UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DANIEL PRYOR,                              )
                                          )
        Plaintiff,                        )
                                          )
    vs.                                   )        Case No. 4:14CV282 JCH
                                          )
STATE FARM MUTUAL AUTOMOBILE              )
INSURANCE COMPANY,                        )
                                          )
        Defendant.                        )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant State Farm Mutual Automobile Insurance
Company's Motion for Partial Summary Judgment, filed April 28, 2015. (ECF No. 14). The
motion is fully briefed and ready for disposition.

## BACKGROUND

For good and valid consideration, Defendant issued Plaintiff Daniel Pryor a certain policy of
insurance, designated Policy No. 219251325 (the "Policy"), on a 2011 Mazda 3 motor vehicle owned
by Plaintiff. (Petition for Damages (hereinafter "Complaint" or "Compl."), Count I ¶ 3). According
to Plaintiff, under the terms of the Policy Defendant was bound to pay Plaintiff damages for loss
from direct, sudden, and accidental damage to, or total or partial theft of, the covered vehicle. (*Id.*, ¶
5).

On or about February 14, 2013, a date on which the Policy was in full force and effect,
Plaintiff claims to have suffered direct, sudden, and accidental damage to his Mazda motor vehicle as
a direct result of smoke and/or fire. (Compl., Count I ¶¶ 4, 8). Plaintiff alleges he cooperated with
the police and fire authorities in their investigation of the occurrence, and further promptly notified

Defendant and cooperated fully as it conducted a protracted investigation into the loss. (*Id.*, ¶¶ 9, 10).[1] Plaintiff thus maintains he complied fully with the terms of the Policy. (*Id.*, ¶ 10). Despite this alleged compliance, Plaintiff states that he has made demands upon Defendant for payment of his losses, but that Defendant has failed and refused to reimburse Plaintiff for his damages. (*Id.*, ¶ 16).

On or about January 20, 2014, Plaintiff filed his Complaint against Defendant in the Circuit Court of the City of St. Louis, State of Missouri. (Defendant's Removal Petition, ¶ 1).[2] The Complaint consists of two counts, as follows: Breach of Contract (Count I); and Claim for Property Damage (Count II). As noted above, Defendant filed the instant Motion for Partial Summary Judgment on April 28, 2015, claiming Count II of Plaintiff's Complaint fails to state a claim upon which relief can be granted. (ECF No. 14).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must

_____

1 Plaintiff asserts he answered all questions truthfully, and further claims to have no personal knowledge or evidence of foul play associated with the fire and/or smoke damage to his vehicle. (Compl., Count I ¶ 11).
2 Defendant removed the action to this Court on February 17, 2014, on the basis of diversity jurisdiction. (Removal Petition, ¶ 2).

set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

Count II of Plaintiff's Complaint, entitled "Claim for Property Damage," states in relevant part as follows:

> 2.      That in the course of conducting its extensive and protracted investigation, defendant tore plaintiff's automobile apart, recklessly disassembling multiple parts of the interior of the vehicle in a random disorganized fashion, making no effort to preserve the component parts, the screws and fasteners such as to allow their reassembly, much less actually reassembling the vehicle.

> 3.      That prior to and after informing plaintiff that defendant would not honor plaintiff's insurance loss claim, defendant failed and/or refused to reconstruct plaintiff's automobile, leaving plaintiff on his own to contend with the ravages of destruction wrought by defendant without any compensation whatsoever therefore.

> 4.      That as a direct and proximate result of the damage inflicted by defendant on plaintiff's automobile, plaintiff sustained damage to his Mazda automobile above and beyond the damage inflicted by the smoke and/or fire….

(Compl., Count II ¶¶ 2-4).

In its Motion for Partial Summary Judgment Defendant construes Plaintiff's claim in Count II as one for trespass to personal property, and Plaintiff does not dispute the characterization. (*See* Memorandum in Support of Defendant's Motion for Partial Summary Judgment ("Defendant's Memo in Support"), P. 1). Under Missouri law, "trespass to chattels involves intentional conduct on

the part of one person which interferes with the use of personal property in the possession of another without justification." *Foremost Ins. Co. v. Public Service Com'n of Missouri*, 985 S.W.2d 793, 796-97 (Mo. App. 1998) (citation omitted). "Conduct which is otherwise a trespass may be justified by the fact that the intruder was authorized to do what he did…" *Id.* at 797 (citations omitted).

In the instant case Defendant asserts its actions[3] in disassembling Plaintiff's automobile were justified, as the disassembly was performed as part of the routine claims process to which Plaintiff consented. (Defendant's Memo in Support, PP. 2, 3-4). Upon consideration the Court agrees, for two reasons. First, Plaintiff acknowledges his consent in the Complaint itself, as follows: "That pursuant to the direction and request of defendant, plaintiff even allowed defendant to disassemble his Mazda automobile to search for a cause of the damage and loss." (Compl., Count I ¶ 12). Second, Defendant presents deposition testimony from Mr. Michael Aumann, the operations manager for Redfield Collision Center, as follows:

> Q (by Plaintiff's attorney)     What is the next entry, sir, that you see on Plaintiff's Exhibit 2, again, going from the oldest entry to the most recent one?
>
> A (by Mr. Aumann)    "Spoke to customer and let him know that insurance was done yesterday. And I told customer that they want us to tear vehicle down to determine what caused fire. He really does not want car back if it is going to smell like burnt plastic."….
>
> Q (by Defendant's attorney)    Now, one of the documents that is part of Exhibit 1 is on page 9. What is that form?
>
> A     That's a work authorization allowing us to work on the vehicle.
>
> Q     And I don't see State Farm's signature on there.
>
> A     No.

---

3 In further support of its motion, Defendant asserts Plaintiff's claim that Defendant's employees disassembled, removed and/or damaged Plaintiff's vehicle as alleged in Count II is not supported by the facts, as the evidence of record demonstrates it was employees of Redfield Collision Center who performed the disassembly. (Defendant's Memo in Support, PP. 1-2, 4). In light of its ruling on the issue of consent, the Court need not address this assertion.

Q        Because before you can do any work, tear down, estimation, anything, who do you have to get permission from to do that?

A        The customer.

Q        And who was the customer who signed page 9 of Exhibit 1?...

A        Daniel Pryor….

Q        --doesn't Redfield get this page 9 signed by the customer, Daniel Pryor, so that you have authorization for the work that is done, including all repairs, labor, handling, and diagnosis for the damage that's being looked at?

A        Correct….

Q        And you won't touch the vehicle until a form like the work authorization, that is page 9 of Exhibit 1, is signed?

A        Correct….Based off our protocol, the work authorization does allow us to tear down the vehicle so we know what the repair—the extent of the repairs, and if the vehicle is repairable….

Q        If the customer had objected, and said, "I don't consent," would you all have torn it down?

A        No….

Q        Is there any record that you have showing Mr. Pryor objected in any way once he was told there was going to be a tear down, the vehicle's disassembly for purposes of diagnosis of the repairs that were needed?

A        No.  There is nothing on the record.

Q        And is it your interpretation of your records that Redfield had consent and permission of Mr. Pryor to do the work that your employees did to take apart the vehicle to diagnose the problems with the vehicle?

A        Correct….

Q        And when State Farm okays tear down to take place, is that telling you that you must tear down the vehicle, or is it telling you it's okay at that time to proceed with your normal procedure?

A        It's okay only if we have a work authorization signed by the customer.

Q        And the customer knows what you're doing and okays it?

A       Yes.

Q       And that's what happened here?[4]

A       Yes.

(Defendant's Motion for Partial Summary Judgment, attached Exh. B, PP. 5, 7, 28, 39-40, 41, 46, 48-49, 56).[5] In light of the foregoing, the Court finds Plaintiff consented to the disassembly of his car, as part of the routine claims process. "Under that circumstance, in which an owner expressly or impliedly assents to or ratifies the disposition of his property, there can be no recovery for [trespass][6], as there was no unauthorized conduct regarding the property of the owner." *Graves v. Stewart*, 642 S.W.2d 649, 650-51 (Mo. banc 1982) (citations omitted).[7]

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (ECF No. 14) is **GRANTED**, and Count II of Plaintiff's Complaint is **DISMISSED** with prejudice.

Dated this 25th Day of June, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

4 Plaintiff's attorney objected to this question on the basis that it called for a conclusion.

5 On redirect examination, Plaintiff's attorney elicited information regarding the fact that the work authorization form signed by Plaintiff was not filled out completely. (Defendant's Exh. B, PP. 60-63). During recross-examination, however, Mr. Aumann clarified that pursuant to Redfield's standard procedures, a customer signs the uncompleted form to provide Redfield authorization to tear the vehicle down and provide the estimate. (*Id.*, PP. 69-71).

6 Although *Graves* dealt with conversion, the analysis is the same, as consent is a complete defense to a conversion claim as well. *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.*, 32 S.W.3d 592, 597 (Mo. App. 2000) (citations omitted).

7 The Court finds the fact that Defendant and/or Redfield failed to reassemble the vehicle to be of no import, in light of the fact that Defendant deemed the car a total loss.